UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | |
|---|---|
| FLOWSHARE, LLC, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | )   No. 4:16-CV-00300-JAR |
| | ) |
| TNS, US, LLC, | ) |
| | ) |
| Defendant. | ) |

## MEMORANDUM AND ORDER

This matter is before the Court on Defendant TNS, US, LLC's ("TNS") Motion to Dismiss (Doc. 20). The motion is fully briefed and ready for disposition. For the reasons set forth below, TNS's motion will be granted in part and denied in part.

### I.   Background

Plaintiff Flowshare, LLC, doing business as ShareTracker ("ShareTracker"), brought the instant action for claims arising out of its business relationship with TNS. In its Amended Complaint, ShareTracker alleges that it is the largest United States research company dedicated to telecom market share and flowshare measurement products, analytics, and solutions for the communications industry. (Amended Complaint ("Compl."), Doc. 16, ¶ 7). Specifically, ShareTracker creates database products and solutions, which consist of numerous data fields, to its customers in the telecommunications industry that, among other things, allow the customers to determine telecom market share, link cell phone users to their providers, identify telecom competitors for those users, and track customer movement between telecom competitors ("ShareTracker products"). (*Id.* at ¶ 8). ShareTracker claims that ShareTracker Products and the underlying intellectual property they embody constitute "Confidential Information."  (*Id.* at ¶ 8).

1

Generally, ShareTracker's business model involves providing fee-based, limited, non-exclusive licenses to its database products, directly or indirectly through authorized independent distributors, and charging a fee for those licenses. (*Id.* at ¶ 9). If ShareTracker grants a license to its database products directly, the license is non-transferable. (*Id.*). If ShareTracker grants a license to its database products indirectly through an authorized distributor, that distributor can grant non-transferable sublicenses authorized by ShareTracker. (*Id.*).

One of ShareTracker's distributors is TNS. (*Id.* at ¶ 10). ShareTracker alleges it entered into an oral license agreement with TNS that allowed TNS to sell or grant limited, non-exclusive, non-transferable sublicenses for a fee to use the ShareTracker Products to three authorized customers or sublicensees. (*Id.*). In exchange, ShareTracker provided updated or refreshed databases and data fields to TNS to support the licensed ShareTracker Products. ShareTracker claims that the pricing or fee structure ShareTracker charged to TNS for ShareTracker Products was unique and individually negotiated based on the needs of each of the authorized customers. (*Id.*).

ShareTracker alleges that in November 2015, it acquired the assets of GeoResults, Inc. ("GeoResults"), a telecom marketing database company engaged in a similar business as ShareTracker. (*Id.* at ¶¶ 11-12). ShareTracker claims one of the principal drivers behind the acquisition was GeoResults' proprietary information, as well as its long-standing customer ("Customer") relationship with one of the largest telecom operating companies in the United States Market. (*Id.* at ¶ 20).

Shortly after ShareTracker acquired GeoResults, the Customer ended its decade-long business relationship with GeoResults. (*Id.* at ¶ 25). ShareTracker alleges TNS encouraged the Customer to end its relationship with GeoResults and to deal directly or indirectly with TNS.

2

(*Id.* at ¶ 27). ShareTracker claims that TNS then, acting in concert with others, misappropriated and converted some or all of ShareTracker's Confidential Information without ShareTracker's authorization to do so. (*Id.* at ¶ 29). In short, ShareTracker claims TNS improperly used its license to ShareTracker's Database Products by distributing, directly or indirectly, those products to the Customer without ShareTracker's authorization and obtaining payment directly from the Customer.

In the instant action, ShareTracker asserts six counts against TNS: (1) breach of oral contract under Missouri law; (2) misappropriation of trade secrets under the Missouri Uniform Trade Secrets Act, Mo. Rev. Stat. §§ 417.450, *et seq.* ("MUTSA"); (3) misappropriation of trade secrets under the federal Defend Trade Secrets Act of 2016, 18 U.S.C. 1836, *et. seq.* ("DTSA"); (4) tortious interference with a business expectancy or relationship; (5) unjust enrichment; and (6) declaratory judgment. TNS now moves to dismiss all six counts.

**II.     Legal Standard**

The purpose of a motion to dismiss under Rule 12(b)(6) is to test the legal sufficiency of the complaint. Fed. R. Civ. P. 12(b)(6). A complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). "[P]leadings under the Federal Rules of Civil Procedure are designed to give the opposing party fair notice of the claim asserted." *Shelter Mut. Ins. Co. v. Pub. Water Supply Dist. No. 7 of Jefferson Cnty., Mo.*, 747 F.2d 1195, 1197 (8th Cir. 1984). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that

3

allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.*

## III. Discussion

### a. Breach of Contract

TNS argues that Count I should be dismissed because, as pled, the alleged oral contract between ShareTracker and TNS is barred by the statute of frauds. (Doc. 21 at 4). Specifically, TNS argues that ShareTracker's breach of contract claim falls within the statute of frauds because it is not clear from the face of the Complaint that the contract could have been performed within one year. (*Id.* at 4-5). It further argues that ShareTracker's Complaint fails to sufficiently plead the existence of any writings that would remove the oral contract from the reach of the statute of frauds. (*Id.* at 6). In response, ShareTracker argues that the statute of frauds is not triggered by the mere failure to plead that the contract could not be performed within one year. (Doc. 30 at 6-7). ShareTracker further argues that in the event the statute of frauds is triggered, ShareTracker pled the existence of writings that memorialize the agreement and supply the essential terms. (*Id.* at 7-8). Finally, ShareTracker argues that the performance exception to the statute of frauds applies because it fully performed its obligation under the contract. (*Id.* at 8-9).

The statute of frauds may properly be raised in a motion to dismiss for failure to state a claim if it appears the contract in question is unwritten and the plaintiff fails to plead facts which would take the contract out of the operation of the statute. *Satterfield v. Missouri Dental Ass'n*, 642 S.W.2d 110, 112 (Mo. Ct. App. 1982). The statute of frauds requires certain contracts to be in writing, including any agreement that is not to be performed within one year of its making. Mo. Rev. Stat. § 432.010. To be enforceable, contracts that fall within the statute of frauds must

contain the essential terms of the contract, including the identity of the parties, the subject matter, the price, and consideration. *See Bayless Bldg. Materials Co. v. Peerless Land Co.*, 509 S.W.2d 206, 210 (Mo. Ct. App. 1974). Several documents in combination may supply the essential terms of the contract, "as long as one document refers to the other, or their contents clearly show they are related." *Smith v. Int'l Paper Co.*, 87 F.3d 245, 247 (8th Cir. 1996) (internal citation omitted). The contract itself need not be in writing; a memorandum of the contract is sufficient. *Vess Beverages, Inc. v. Paddington Corp.*, 941 F.2d 651, 654 (8th Cir. 1991).

In the event an oral contract falls within statute of frauds, Missouri common law recognizes equitable exceptions to the statute, including performance of the agreement by the party seeking enforcement thereof. *Mea Fin. Enterprises, LLC v. Fiserv Sols., Inc.*, No. 13-05041-CV-SW-BP, 2013 WL 12155467, at *2 (W.D. Mo. Oct. 16, 2013) (citing *Mika v. Cent. Bank of Kansas City*, 112 S.W.3d 82, 89 (Mo. Ct. App. 2003)). However, any exception to the statute of frauds is "rigidly scrutinized and sparingly invoked so that relief will be denied if there is doubt as to whether there has been a meeting of minds or full understanding of the terms sought to be enforced." *Mika*, 112 S.W.3d at 89 (internal citation and quotation omitted).

On its face, ShareTracker's Complaint contains no allegations regarding the duration of the oral contract providing TNS with a license to ShareTracker's database products. ShareTracker in its Complaint alleges that it "regularly provided and continues to provide, under certain terms and conditions of its Contract with TNS, updated or refreshed databases and data fields to TNS to support the licensed ShareTracker products." (Compl. at ¶ 10). It alleges that ShareTracker charged TNS for those products, and the pricing was unique and individually negotiated. (*Id.*). However, although ShareTracker argues that its agreements were typically for one year, with quarterly or bi-annual deliverables or updates (Doc. 30 at 7), no such allegations

5

are contained in the Complaint itself.  Therefore, the Court concludes that ShareTracker has not pled sufficient facts to remove the oral contract from the statute of frauds; i.e. that the contract may be completed within one year, thereby satisfying the statute of frauds.  *See Satterfield*, 642 S.W.2d at 112.

The Court next examines whether any writings memorialize the terms of the parties' agreement sufficient to satisfy the statute of frauds.  ShareTracker alleges in its Complaint that the oral contract was "confirmed via various writings exchanged by the parties and subsequent Letter Agreements" (Compl. at ¶ 34), which ShareTracker argues satisfies the statute of frauds. (Doc. 30 at 8).  ShareTracker pled that there was a "meeting of the minds between ShareTracker and TNS as to the essential terms of the Contract" (*id.* at ¶ 35); however, it does not go through or name the essential terms.  ShareTracker instead asks the Court to consider two documents attached to its opposition to TNS's motion to dismiss as evidence of the existence of written agreements or memoranda that contain the essential terms of the oral contract (Doc. 30 at 7-8; Exs. A and B).

"Though matters outside the pleading may not be considered in deciding a Rule 12 motion to dismiss, documents necessarily embraced by the complaint are not matters outside the pleading."  *Gorog v. Best Buy Co.*, 760 F.3d 787, 791 (8th Cir. 2014) (quoting *Ashanti v. City of Golden Valley*, 666 F.3d 1148, 1151 (8th Cir. 2012)).  The "contracts upon which a claim rests are evidently embraced by the pleadings." *Id.* (citation omitted).  "In a case involving a contract, the court may examine the contract documents in deciding a motion to dismiss." *Stahl v. U.S. Dep't of Agric.*, 372 F.3d 697, 700 (8th Cir. 2003).

ShareTracker argues that the Non-Disclosure Agreement ("NDA") and email attached to its opposition to TNS's motion to dismiss establishes that the oral agreement is memorialized in

6

several writings that together supply the essential terms (Doc. 30 at 7).  TNS argues in response that the NDA and email are documents outside the pleadings that should not be considered on a motion to dismiss and, even if the Court were to consider them, they do not contain the essential terms of the oral agreement.  (Doc. 34 at 3-5).  The Court finds that neither document is necessarily embraced by the Complaint, and, therefore, constitute matters outside the pleading.  ShareTracker fails to reference either document in its Complaint or plead what essential terms are contained in the purported written agreements therein.  A plaintiff need not attach the actual contract to the complaint or plead its terms verbatim to state a claim; instead, a plaintiff may plead its legal effect.  *Nelson v. Wallen*, No. 4:13CV1715 CDP, 2014 WL 2739456, at *1 (E.D. Mo. June 17, 2014).  However, ShareTracker not only failed to attach writings supporting the existence of a contract, but also inadequately pled the essential terms of the oral contract and failed to identify in what writings they are contained.  Therefore, the Court finds that the oral contract between ShareTracker and TNS does fall within the statute of frauds, and ShareTracker inadequately pled the elements necessary to satisfy the statute.

   Missouri law has provided for a number of exceptions that remove an oral contract from the statute of frauds, and ShareTracker argues that its performance under the contract should remove the contract from the statute.  For purposes of a motion to dismiss, a petition that alleges full performance of an oral contract by the plaintiff removes the contract from the statute of frauds.  *LaFont v. Taylor*, 902 S.W.2d 375, 377 (Mo. Ct. App. 1995) (citing *Irwin v. Bertelsmeyer*, 730 S.W.2d 302, 303 (Mo.App.1987)); *see also Don King Equip. Co. v. Double D Tractor Parts, Inc.*, 115 S.W.3d 363, 374 (Mo. Ct. App. 2003) ("The statute of frauds has no application where there has been a full and complete performance of the contract by one of the contracting parties.").  However, such performance must be pled.  *Irwin*, 730 S.W.2d at 303 (for

purposes of a motion to dismiss, plaintiff sufficiently removed the contract from the statute of frauds when he alleged full performance of the oral contract, in that he "performed all the terms and conditions of said agreement").

In the Complaint, ShareTracker pleads that it "provided and continues to provide, under certain terms and conditions of its Contract with TNS, updated or refreshed databases and data fields to TNS to support the licensed ShareTracker Products." (Compl. at ¶ 10). ShareTracker argues that this language demonstrates complete performance. The Court disagrees. Instead, that language indicates that present and future obligations remain. Future performance obligations necessarily imply that ShareTracker has not fully performed under the contract. As a result, ShareTracker's performance under the contract does not remove the contract from the statute of frauds. For the reasons stated above, TNS's motion to dismiss as to Count I will be granted without prejudice.

### b.  Count II-Misappropriation of Trade Secrets-Missouri Uniform Trade Secrets Act (MUTSA)

To establish a MUTSA violation, Plaintiffs must demonstrate (1) the existence of protectable trade secrets, (2) misappropriation of those trade secrets by Defendant, and (3) damages. Mo. Rev. Stat. § 417.453(2). In support of its motion to dismiss, TNS argues that ShareTracker failed to plead facts to support the existence of a trade secret or that it took reasonable steps to maintain the secrecy of its alleged trade secret. (Doc. 7-10). In response, ShareTracker argues that it pled a colorable trade secrets claim, included facts sufficient to support the existence of a trade secret, and took reasonable measures to protect the secrecy of the trade secret. (Doc. 30 at 10-13).

MUTSA defines a "trade secret" as "information, including but not limited to, technical or nontechnical data, a formula, pattern, compilation, program, device, method, technique, or

8

process, that: (a) Derives independent economic value, actual or potential, from not being generally known to, and not being readily ascertainable by proper means by other persons who can obtain economic value from its disclosure or use; and (b) Is the subject of efforts that are reasonable under the circumstances to maintain its secrecy." § 417.453(4).  The existence of a trade secret is a conclusion of law based on the applicable facts. *Lyn-Flex W., Inc. v. Dieckhaus*, 24 S.W.3d 693, 698 (Mo. Ct. App. 1999).  Missouri courts use the following factors to determine whether information constitutes a trade secret under the MUTSA: "(1) the extent to which the information is known outside of [the] business; (2) the extent to which it is known by employees and others involved in [the] business; (3) the extent of measures taken by [the business] to guard the secrecy of the information; (4) the value of the information to [the business] and to [its] competitors; (5) the amount of effort or money expended by [the business] in developing the information; (6) the ease or difficulty with which the information could be properly acquired or duplicated by others." *Cerner Corp. v. Visicu, Inc.,* 667 F. Supp. 2d 1062, 1076–1077 (W.D. Mo. 2009) (citing *Am. Family Mut. Ins. Co. v. Mo. Dep't of Ins.,* 169 S.W.3d 905, 909–10 (Mo. Ct. App. 2005)).

"If an individual discloses his trade secret to others who are under no obligation to protect the confidentiality of the information, or otherwise publicly discloses the secret, his property right is extinguished." *Ruckelshaus v. Monsanto Co.,* 467 U.S. 986, 1002 (1984).  However, a business need only show that it took reasonable steps to protect its trade secret information. *See Bancorp Servs., L.L.C. v. Hartford Life Ins. Co.*, No. 4:00-CV-70CEJ, 2002 WL 32727076, at *4 (E.D. Mo. Feb. 25, 2002) (internal citations omitted).

Although broad and general, ShareTracker stated a viable claim under MUTSA. ShareTracker pled that it maintains proprietary, network-based technology that uses the largest

sample sizes in the industry and is highly accurate and grandular. (Compl. at ¶ 8). It further claims that at its core, ShareTracker provides database products and solutions, which were the result of a significant expenditure of time, effort and expense and included the work of dozens of engineers, mathematicians, market researchers, and other highly skilled professionals. (*Id*.). It further pled that such information derived economic value from not being generally known to, and not being readily ascertainable by, other persons. (*Id*. at ¶ 44). As such, ShareTracker has pled sufficient facts to establish the existence of a trade secret and that it took steps to protect it. A determination of whether those steps were reasonable to protect its trade secret information is an inquiry more appropriate at the summary judgment stage. At this junction, ShareTracker plead facts sufficient to survive a motion to dismiss.

      **c.  Count III-Misappropriation of Trade Secrets-Federal Defend Trade Secrets Act of 2016 (DTSA)**

In Count III, ShareTracker advances a claim under the DTSA. The arguments presented by the parties regarding the allegations under DTSA are similar if not identical to their arguments under MUTSA. Therefore, for the reasons provided in the previous section and finding no law to the contrary, TNS's motion to dismiss as to Count III is denied.

      **d.  Count IV-Tortious Interference with a Business Expectancy or Relationship**

MUTSA "displace[s] conflicting tort, restitutionary, and other laws of this state providing civil remedies for misappropriation of a trade secret." Mo. Rev. Stat. § 417.463.1. However, MUTSA does not prevent a party from bringing "[o]ther civil remedies that are not based upon misappropriation of a trade secret." Mo. Rev. Stat. § 417.463.2(2). TNS argues that MUTSA expressly preempts common law claims that are derivative of a MUTSA claim. (Doc. 21 at 11-12). It argues that ShareTracker's tortious interference claim is a restatement of its claim for trade secret misappropriation and is therefore barred. (*Id*. at 13-14). In support of its position

that the Court should dismiss the common law claim at the motion to dismiss stage, TNS cites *EnviroPAK Corp. v. Zenfinity Capital, LLC*, No. 4:14CV00754 ERW, 2015 WL 331807, at *6 (E.D. Mo. Jan. 23, 2015).  However, *EnviroPAK* is distinguishable.  There, the court found that at least part of plaintiff's tortious interference claim was factually derivative of the MUTSA claim because plaintiff specifically used the term "trade secret" throughout the common law claim.  *Id.*  The court expressed concern, however, that, "[a]s a practical matter, until this [c]ourt is able to make a determination as to whether the information to which Plaintiff alludes qualifies as a trade secret, the court cannot rule on the precise extent to which Count II is preempted."  *Id.*  The court concluded that "at the very least, Plaintiff may not use the term 'trade secret[s] in reference to or in support of [the common law count]."  *Id.*

Here, it does appear that the core facts forming the basis of both the MUTSA and tortious interference claims are similar.  However, ShareTracker only uses the term "trade secret" in its MUTSA and DTSA claims, and it properly sets out the factual basis and requisite elements for the tortious interference claim. Furthermore, the Court will permit the simultaneous pleading of common law and statutory claims on the grounds that, under Federal Rule of Civil Procedure 8(d), a party is permitted to plead in the alternative or state as many separate claims it has, regardless of consistency.  If ShareTracker can demonstrate that the Confidential Information qualifies as a trade secret, it may proceed with its MUTSA and DTSA claims, not its common law claims.  If, on the other hand, ShareTracker cannot demonstrate that the information qualifies as a trade secret that was misappropriated, it may proceed with its common law claims. Until a determination of the existence of a trade secret is made, likely at the summary judgment stage, the Court will not at this juncture conclude that Count IV is preempted.

### e. Count V-Unjust Enrichment

To state an unjust enrichment claim under Missouri law, ShareTracker must allege: (1) that TNS was enriched by the receipt of a benefit; (2) that the enrichment was at ShareTracker's expense; and (3) that it would be unjust to allow TNS to retain the benefit. *See S & J, Inc. v. McLoud & Co., L.L.C.,* 108 S.W.3d 765, 768 (Mo. App. Ct. 2003). For similar reasons set forth in its motion to dismiss Count IV, TNS argues that ShareTracker's unjust enrichment claim is merely a restatement of its claim for trade secret misappropriation and is thus preempted. (Doc. 21 at 12). However, for the reasons stated in the previous section, until a determination is made with regard to whether the Confidential Information alleged by ShareTracker is a trade secret, the Court cannot conclude whether Count V is preempted.

### f. Count VI-Declaratory Judgment

TNS argues that ShareTracker's declaratory judgment claim should be dismissed as duplicative of ShareTracker's breach of contract claim. "Where a party's declaratory judgment claim is purely duplicative of its breach of contract claim, the declaratory judgment claim may be properly dismissed." *Cystic Fibrosis Pharmacy, Inc. v. Express Scripts, Inc.*, No. 4:16-CV-1169 (CEJ), 2016 WL 7324968, at *5 (E.D. Mo. Dec. 16, 2016) (internal citations omitted). "However, the mere fact that claims for declaratory judgment and breach of contract are closely related—even where the declaratory judgment claim 'encompasses' the breach of contract claim—does not require dismissing the declaratory judgment claim." *Id.* (citing *Marty H. Segelbaum, Inc. v. MW Capital, LLC*, 673 F. Supp. 2d 875, 882 (D. Minn. 2009)).

Here, ShareTracker's claims for declaratory judgment and breach of contract are closely related, but the declaratory judgment claim seeks the additional relief of determining the parties' rights and responsibilities under the contract, as well as the rights, obligations, and liabilities of

the parties with regard to future conduct. *See MidCountry Bank v. Rajchenbach*, No. 15-CV-3683 (SRN/TNL), 2016 WL 3064066, at *4 (D. Minn. May 31, 2016) ("In short, the declaratory judgment claim will establish what the Defendants' obligations are while the breach of contract claim will resolve whether Defendants breached those obligations in a particular instance."). TNS's motion to dismiss Count VI will be denied.

Accordingly,

**IT IS HEREBY ORDERED** that Defendant's Motion to Dismiss is **GRANTED IN PART** and **DENIED IN PART.**  The motion is **GRANTED** as to Count I of Plaintiff's Amended Complaint (Doc. 16), which is **DISMISSED without prejudice**.  The motion is **DENIED** as to Counts II-VI.

**IT IS FURTHER ORDERED** that Defendant will file an answer to the Complaint within **fifteen (15) days** of this Order.

Dated this 26th day of July, 2017.

*John A. Ross*
JOHN A. ROSS
UNITED STATES DISTRICT JUDGE